IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNADETTE WILLIAMS, | : | |
| Plaintiff, | : | No. |
| v. | : | |
| AETNA INC. d/b/a AETNA LIFE INSURANCE COMPANY | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## COMPLAINT

Plaintiff Bernadette Williams ("Ms. Williams"), by her counsel, files this Complaint against Aetna Inc. d/b/a Aetna Life Insurance Company ("Aetna") as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), as amended, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA"). This Court has jurisdiction over these claims under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and (4), and 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. §1391(b) because each claim arose in the Western District of Pennsylvania and because Ms. Williams reside in this District.

### PARTIES

3. Ms. Williams is adult individual residing in the Western District of Pennsylvania. At all relevant times, Ms. Williams was subjected to age and disability discrimination in her employment with Aetna. At all relevant times, Ms. Williams was over 40 years of age. At all relevant times, Ms. Williams had a physical or mental impairment that substantially limits one or more major life activities.

4. Aetna is a Pennsylvania corporation with a registered business address at 151 Farmington Avenue, Hartford, Connecticut 06156. Aetna has a registered agent address at 67 Burnside Avenue, East Hartford, Connecticut 06108-3408.

## FACTS

### Employment Background

5. Aetna is a publicly traded company that provides health insurance products and related services throughout the United States. Aetna employs more than 15 employees.

6. Ms. Williams became employed by Aetna as an Associate Customer Service Representative around November 2013, a position which she held at all relevant times.

7. As an Associate Customer Service Representative, Ms. Williams was required to field telephonic and electronic inquiries from Aetna customers regarding Aetna insurance.

8. As an Associate Customer Service Representative, Ms. Williams was able to perform her job duties from any physical location, whether at work, home or otherwise, by communicating with Aetna customers using e-mail or telephone.

9. As an Associate Customer Service Representative, Ms. Williams was able to communicate with all other Aetna employees from any physical location, whether at work, home or otherwise, using e-mail, telephone and/or inter-office instant messenger.

10. At all relevant times, Ms. Williams' job duties did not require her to be physically present at any Aetna location. The essential functions of Ms. Williams' job can be accomplished remotely, including from home.

11. At all relevant times, any supervision over Ms. Williams was accomplished through computerized data collection and did not require in-person oversight.

12. To the extent human oversight was used to supervise Ms. Williams, such supervision was performed by out-of-state supervisors who were not physically present at Ms. Williams' place of employment for Aetna.

13. At all relevant times, Ms. Williams either met or exceeded her performance metrics.

14. Because Ms. Williams either met or exceeded her performance metrics, she was asked by Aetna to train other Aetna employees to become customer service representatives.

15. Because Ms. Williams either met or exceeded her performance metrics, she received discretionary quarterly performance-based bonuses during each quarter in which she worked for Aetna.

### Disability Background

16. In early 2015, Ms. Williams began to experience vision and balance impairments.

17. Throughout 2015, Ms. Williams used permissible leave under the Family and Medical Leave Act ("FMLA") as well as short-term disability to excuse her presence from work because of her vestibular disease.

18. On or around October 14, 2015, Ms. Williams' vision and balance impairments were diagnosed as visual vestibular hypersensitivity. This type of vestibular disease is akin to vertigo whereby Ms. Williams became prone to episodes of dizziness that render her unable to control her balance.

19. As part of her diagnosis, noise, movement and harsh lighting were identified as contributors to Ms. Williams' symptoms. Steps, patterns and long hallways were also identified as contributors to Ms. Williams' symptoms. Each of these contributors was present at the Aetna call center from which Ms. Williams worked.

20. Ms. Williams was paid $16.00 per hour plus other benefits at the time of her diagnosis of visual vestibular hypersensitivity.

21. After October 14, 2015, Ms. Williams began using her remaining FMLA as well as short-term disability to take leave from work for her vestibular disease.

22. In December 2015, Aetna contacted Ms. Williams' doctor without her permission or authorization to determine the date on which she would likely return to work full-time. Upon information and belief, Aetna was told by Ms. Williams' doctor that she would soon be permitted to return to work initially for four-hour work days so that she could be reevaluated.

23. Ms. Williams' return to work was to be done gradually so that her symptoms could be better managed and controlled over time.

24. In or about January 2016, Ms. Williams' doctor officially recommended that she could return to work for a four-hour work day, with an evaluation as to her progress in 30 days.

25. Ms. Williams reported this recommendation to Aetna, but Aetna refused to accommodate Ms. Williams' initial return to work on a modified four-hour day. At that time, Aetna provided Ms. Williams with no other option for her return to work.

26. In late-January 2016, because Aetna refused to permit her to return to work on a modified work schedule, Ms. Williams requested that she be permitted to work from home to accommodate her disability.

27. Ms. Williams' home office was in a secure area of her home, and all that was necessary for her job was a phone, computer and secure line.

28. By working from home, Ms. Williams was capable of controlling her environment so that her visual vestibular hypersensitivity is more easily managed.

29. Ms. Williams' doctor again recommended that she be permitted to return to work for an initial four-hour work day in February and March 2016. She reported each of those recommendations to Aetna.

30. Aetna denied each attempt for accommodation by Ms. Williams for her to gradually return to work on a modified schedule. Aetna also denied each attempt for accommodation by Ms. Williams to work from home.

31. At all relevant times, Aetna refused to reassign—or seek reassignment for—Ms. Williams to a vacant position without the known contributors to her disability.

32. At all relevant times, Aetna had available positions in different departments without the known contributors to her disability, such as claims or data entry. Ms. Williams was qualified for each of those positions.

33. At all relevant times, Aetna refused to interact with Ms. Williams to reasonably accommodate her visual vestibular hypersensitivity.

34. Each of Ms. Williams' requests for accommodation were reasonable because Aetna historically modified work schedules for employees with disabilities. Aetna also historically permitted employees to work from home because physical presence at Aetna is not required to perform the job duties of a customer service representative.

35. In April 2016, Aetna required Ms. Williams to begin long-term disability.

**Similarly-Situated Employees at Aetna**

36. At all relevant times, Aetna provided modified work schedules for its employees, including younger employees, to accommodate their disabilities. At all relevant times, Aetna also permitted younger employees without disabilities to work from home.

37. For instance, in mid- to late-2016, Cynthia Lehue was diagnosed with a vestibular disability. Cynthia Lehue was a customer service representative for Aetna at that time. Aetna provided Cynthia Lehue with a modified work schedule to accommodate her disability.

38. In 2017, Aetna also provided Debi Beige, who is younger than Ms. Williams, with a modified work schedule to accommodate her disability. Debi Beige was a customer service representative for Aetna at that time.

39. Rebekka Diehl, who is younger than Ms. Williams, is permitted to work from home. Rebekka Diehl is a customer service representative for Aetna.

40. At least one other customer service representative for Aetna, who is younger than Ms. Williams, is permitted to work from home.

41. Aetna further permits its customer services representative supervisors to work from home.

42. Shannon Kaelin, who is younger than Ms. Williams, is also permitted to work from home. Upon information and belief, Shannon Kaelin is a claims representative.

### Aetna's Work-From-Home Program

43. As stated above, Aetna has historically permitted its employees to work from home, including customer service representatives.

44. Since at least 2017, Aetna formally established a work-from-home program whereby Aetna employees are permitted to work remotely from home.

45. Customer service representatives are among the career opportunities that Aetna lists as being permitted to work remotely from home.

46. According to the work-from-home program, Aetna also permits its employees to work remotely from home in marketing, management and information technology.

### Harm Suffered by Ms. Williams

47. Any reasonable person could find that Ms. Williams' employment was substantially worsened because of Aetna's conduct with respect to her disability, visual vestibular hypersensitivity.

48. Ms. Williams has essentially been terminated by Aetna since October 2015 because she was diagnosed with visual vestibular hypersensitivity.

49. As of June 1, 2017, Aetna terminated Ms. Williams' long-term disability because of her visual vestibular hypersensitivity.

50. As a direct and proximate result of Aetna's discrimination, Ms. Williams suffered loss of wages, benefits and future pecuniary gains.

51. As a direct and proximate result of Aetna's discrimination, Ms. Williams' also suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

52. Aetna's conduct in refusing to accommodate Ms. Williams' visual vestibular hypersensitivity was done with malice or recklessness indifference to her federal protected rights.

### COUNT I – Discrimination Under the ADA, 42 U.S.C. § 12101, *et seq.*

53. The foregoing paragraphs are incorporated herein.

54. Ms. Williams is a disabled person within the meaning of the ADA because she has a physical or mental impairment that substantially limits one or more major life activities.

55. Ms. Williams was otherwise qualified to perform the essential functions of her job as an Associate Customer Service Representative, with or without reasonable accommodations from Aetna.

56. Ms. Williams suffered an adverse employment decision because of Aetna's discrimination against her because of her disability.

57. Ms. Williams suffered significant harm because Aetna discriminated against her because of her disability.

**COUNT II – Failure-to-Accommodate Under the ADA, 42 U.S.C. § 12101,** *et seq.*

58. The foregoing paragraphs are incorporated herein.

59. Ms. Williams is a disabled person within the meaning of the ADA because she has a physical or mental impairment that substantially limits one or more major life activities.

60. Aetna knew that Ms. Williams was a disabled person within the meaning of the ADA.

61. Ms. Williams expressly requested the reasonable accommodation of a modified work schedule or to work from home.

62. Aetna did not make a good faith effort to assist Ms. Williams in accommodating her disability.

63. Ms. Williams could have been accommodated but for Aetna's lack of good faith.

64. Ms. Williams suffered significant harm because Aetna did not accommodate her disability.

**COUNT III – Discrimination Under the ADEA, 29 U.S.C. § 621,** *et seq*.

65. The foregoing paragraphs are incorporated herein.

66. At all relevant times, Ms. Williams was at least 49-years-old, making her a member of a protected class under the ADEA because of her age.

67. Ms. Williams was qualified to perform the essential functions of her job as an Associate Customer Service Representative.

68. Ms. Williams suffered an adverse employment decision because of Aetna's discrimination against her because of her age.

69. Ms. Williams was not afforded the same terms, conditions and privileges of her employment as younger employees at Aetna, thereby raising an inference of age discrimination.

70. Ms. Williams suffered significant harm because Aetna discriminated against her because of her age.

### COUNT IV – Disability Discrimination Under the PHRA, 43 P.S. § 951, *et seq.*

71. The foregoing paragraphs are incorporated herein.

72. Ms. Williams is a disabled person within the meaning of the PHRA because she has a physical or mental impairment that substantially limits one or more major life activities.

73. Ms. Williams was otherwise qualified to perform the essential functions of her job as an Associate Customer Service Representative, with or without reasonable accommodations from Aetna.

74. Ms. Williams suffered an adverse employment decision because of Aetna's discrimination against her because of her disability.

75. Ms. Williams suffered significant harm because Aetna discriminated against her because of disability

### Count V – Age Discrimination Under the PHRA, 43 P.S. § 951, *et seq.*

76. The foregoing paragraphs are incorporated herein.

77. At all relevant times, Ms. Williams was at least 49-years-old, making her a member of a protected class under the PHRA because of her age.

78. Ms. Williams was qualified to perform the essential functions of her job as an Associate Customer Service Representative.

79. Ms. Williams suffered an adverse employment decision because of Aetna's discrimination against her because of her age.

80. Ms. Williams was not afforded the same terms, conditions and privileges of her employment as younger employees at Aetna, thereby raising an inference of age discrimination.

81. Ms. Williams suffered significant harm because Aetna discriminated against her because of her age.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Williams' requests that this Court grant the following relief:

a. That Aetna be permanently enjoined from discriminating against Ms. Williams because of age and disability;

b. That Aetna be required to compensate Ms. Williams for back pay, front pay and other damages in the form of lost wages, and lost or reduced benefits, with interest until the date of any verdict as to be determined at trial;

c. That Aetna compensate Ms. Williams for all other applicable compensatory damages in an amount to be determined at trial;

d. Liquidated damages in an amount to be determined at trial;

e. Punitive damages in an amount to be determined at trial;

f. Attorney's fees and costs; and

g. All other relief this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

Timothy P. O'Brien
Pa. ID No. 22104

239 Fourth Avenue
Investment Building, Suite 2013
Pittsburgh, PA  15222
(412) 232-4400